IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BITCO GENERAL INSURANCE CORPORATION, in its own right and as assignee of CLARENCE I. STACK, INC., <br><br>        Plaintiff. <br><br>        v. <br><br>SAS RETAIL SERVICES, LLC, <br><br>        Defendant. | 1:24CV657 |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

    This case involves a claim for indemnity for a settlement of a personal injury lawsuit. Before the court is the motion of Defendant SAS Retail Services, LLC ("SAS") to dismiss Count I of the complaint, alleging contractual indemnity, for failure to state a claim. (Doc. 14.) Plaintiff BITCO General Insurance Corporation ("BITCO"), as insurer for Plaintiff Clarence I. Stack, Inc., filed a response in opposition (Doc. 33), to which SAS has replied. (Doc. 35.) The court granted BITCO leave to file a surreply, which the court has also considered. (Doc. 39.) For the following reasons, SAS's motion will be denied.

I.    **BACKGROUND**

    The factual allegations of the well-pleaded complaint,[1] which

---

[1] The court also considers documents attached to the complaint, which are incorporated into it, as their authenticity is not challenged.

are accepted as true for purposes of the motion to dismiss and are viewed in the light most favorable to BITCO, show the following.

SAS is "a service partner for retailers and retail suppliers" incorporated in Delaware with its principal place of business in California. (Doc. 7 ¶ 3.) BITCO is an insurance corporation that is headquartered and incorporated in Iowa. (Id. ¶ 1; Doc. 24 ¶ 4.)

In 2018, SAS, as an authorized agent of Giant of Maryland, LLC ("Giant"), a grocery store chain, entered into a "Consulting and Services Agreement" ("Agreement") with Retail Business Services, LLC ("RBS"). (Doc. 7 ¶ 5.) The Agreement required SAS to perform certain remodeling work of a Giant facility. (Id.) RBS engaged Stack to work on the remodeling project. (Id. ¶ 6.) BITCO is Stack's insurer. (Id. at 1.) Neither Stack nor RBS is a party to this action. Stack did not sign the Agreement, and BITCO concedes that Stack is not a party to it. (Id. ¶ 5; Doc. 39 at 3.)

The Agreement contained an indemnification clause that provided in relevant part as follows:

> Service Provider [SAS] shall indemnify, defend and hold harmless each Customer Company [RBS],[2] and their respective current, future and former officers, directors, managers, employees, representatives, agents, contractors, successors and permitted assigns (collectively, the "Customer Indemnitees") from and

---

Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016) (citations omitted).

[2] The Agreement defines the "Service Provider" as SAS and the "Customer" as RBS. (Doc. 7 at 10.)

2

> against any and all losses, liabilities, penalties, fines, expenses, damages, judgments, settlements, and other costs . . . incurred by Customer Indemnitees as a result of any third-party claim ("Damages"), and defend the Customer Indemnitees against all third party claims, suits, proceedings and actions ("Claims"), which arise out of or relate to: (i) any action or omission or negligence or willful misconduct by Service Provider or any Personnel . . . (vii) all Claims by Service Provider Personnel arising out of or relating to Service Provider's performance under the agreement . . . .

(Doc. 7 at 14–15.) BITCO alleges that SAS agreed to indemnify Stack, which BITCO asserts was a "contractor" of RBS. (Id. ¶ 9.)

During the construction project, Linda Ellis-Bland, a SAS employee, was injured "when a stack of dollies fell onto her" and, on June 23, 2022, sued Stack for personal injuries. (Id. ¶ 7.) BITCO defended Stack in the lawsuit and asserted that Stack was entitled to indemnification from SAS. (Id. ¶¶ 13–18.) BITCO repeatedly demanded that SAS defend and indemnify it, but SAS never responded. (Id.) BITCO did receive, however, a letter from a claims administrator it believes was acting as a representative for Hartford Fire Insurance company, which BITCO claims is SAS's insurer, denying that SAS owed Stack any indemnity. (Id. ¶ 16.) BITCO eventually settled Ellis-Bland's claims for $950,000. (Id. ¶ 19.)

BITCO filed this action in the General Court of Justice, Superior Court Division in Guilford County, North Carolina, seeking reimbursement for the cost of defending Stack in the underlying action and indemnity of the $950,000 settlement payment

3

to resolve Ellis-Bland's claims. (Doc. 7 ¶ 25.) BITCO asserts claims for contractual indemnification (Count I), common law indemnification (Count II), statutory contribution (Count III), and common law contribution in its own right and on Stack's behalf (Count IV). (Id. ¶¶ 26-37.) SAS removed the action to this court (Doc. 1) and filed the instant partial motion to dismiss Count I seeking contractual indemnification. (Doc. 15 at 1; Doc. 7 ¶ 26-30.)

## II. ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).

SAS argues that BITCO's contractual indemnification claim should be dismissed for three main reasons: (1) BITCO and Stack may not enforce the Agreement, (2) even if Stack can enforce the

4

Agreement, BITCO may not do so because the Agreement prohibits Stack's assignment of its claim to it, and (3) the Agreement's indemnification clause is invalid under New York law. (Docs. 15, 35.) BITCO responds that Stack can sue as a third-party beneficiary of the Agreement, that the Agreement's assignment prohibition does not bar BITCO's effort to seek subrogation, and that the New York statute that SAS relies on is inapplicable to the indemnification clause. (Docs. 33, 39.) Each contention is addressed in turn.

**A.  Ability of Stack and BITCO to Enforce the Agreement**

SAS argues that neither Stack nor BITCO may seek contractual indemnification because they are not parties to the Agreement. (Doc. 15 at 7-9.) BITCO responds that Stack is a third-party beneficiary of the Agreement and it may stand in Stack's shoes to enforce it. (Doc. 33 at 10-11.)

As a threshold matter, the parties dispute which state's law applies. In its opening brief, SAS argued that Maryland, rather than New York, law controls, but that the ultimate outcome is the same regardless of which law applies. (Doc. 15 at 5-11.) BITCO, relying on a choice of law provision in the Agreement, argued that New York law applies. (Doc. 33 at 3, 7.) In its reply, SAS stated that it would "welcome the application of New York law if there were any basis for its application in this case; however, . . . there is not." (Doc. 35 at 1-2.) Although SAS contended that

5

"[BITCO]'s reading of the indemnity provision . . . to include Stack's own negligence would be invalid under both Maryland and New York law," SAS almost exclusively cited New York cases in its reply and invoked a New York statute that it argues "clearly prohibits" enforcement of the indemnity clause. (Id. at 2, 4.)

Where, as here, the court is exercising its diversity jurisdiction, it applies the choice of law rules of the state in which it sits. Volvo Constr. Equip. N.A. v. CLM Equip. Co., 386 F.3d 581, 599–600 (4th Cir. 2004) (citations omitted). North Carolina allows parties to agree that the laws of another state will govern the interpretation of their agreements. N.C. Gen. Stat. § 25-1-301(a). A contractual choice-of-law provision is enforceable under North Carolina law if the parties "had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of the state or otherwise applicable law." Sawyer v. Market Am., Inc., 661 S.E.2d 750, 752 (N.C. Ct. App. 2008) (citation and internal quotation marks omitted). There is a strong presumption that the parties' choice of law agreement will be given effect. Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980).

The Agreement contains a choice of law provision that stipulates it shall be interpreted according to New York law. (Doc. 7 at 17.) SAS has not argued that the application of New York law would contradict a fundamental public policy of North

6

Carolina or any otherwise applicable law. To the contrary, it has stated that it "welcomes" the application of New York law, which it argues prohibits enforcement of the indemnification clause. Moreover, the court has not identified any aspect of New York law that would undermine the fundamental policy of North Carolina. Accordingly, the court will apply New York law to construe the Agreement for purposes of this motion.

New York law requires that "[o]ne who seeks to recover as a third-party beneficiary of a contract must establish that a valid and binding contract exists between other parties, that the contract was intended for his or her benefit, and that the benefit was direct rather than incidental." Edge Mgmt. Consulting, Inc. v. Blank, 807 N.Y.S.2d 353, 358 (App. Div. 1st Dep't 2006) (citations omitted). The parties executing the agreement must have intended to provide a benefit to the third party; "absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts." Sukhram v. Forest City Myrtle Assocs., 220 N.Y.S.3d 773, 775 (App. Div. 2d Dep't 2024) (quoting Neurological Surgery, P.C. v. Grp. Health Inc., 204 N.Y.S.3d 565, 568 (App. Div. 2d Dep't 2024)) (internal quotation marks omitted).

BITCO asserts that Stack was a third-party beneficiary of the Agreement because the Agreement provides that SAS would indemnify all "contractors" of RBS, and that Stack is such a contractor.

7

SAS responds that Stack is not a third-party beneficiary and, alternatively, the indemnification provision does not apply because Ellis-Bland's complaint alleged that Stack was solely responsible for her injuries and therefore SAS has no obligation to indemnify Stack for its own negligence. (Doc. 15 at 7, 10.)

At this stage of the proceedings, BITCO has alleged that Stack was an RBS contractor, that SAS agreed to indemnify each of RBS's contractors for losses incurred because of any third-party claim by "Personnel" such as Ellis-Bland, and that Ellis-Bland's underlying claim falls within the scope of the Agreement's indemnification provision. (Doc. 7 ¶¶ 7-12.) Those allegations, if proven, would support BITCO's claim for contractual indemnification. See Garcia v. Black Sea Props., LLC, 210 N.Y.S.3d 855, 860 (App. Div. 4th Dep't 2024) (non-party to agreement was a third-party beneficiary of its indemnification provision where clause required the defendant to indemnify the signatory's "customers" for a specified category of claims). Moreover, BITCO has pleaded that Ellis-Bland's claim arose out of SAS's performance under the Agreement (Doc. 7 ¶ 11,) and while the allegations are somewhat bare, BITCO has attached to the complaint documents indicating that RBS claimed that an SAS employee "accidentally bumped into a stack of wooden dollies, which caused them to fall off the trailer, striking Ms. Ellis-Bland." (Id. at 222 (internal quotation marks omitted).) BITCO also notes that it sued SAS in

8

a third-party complaint in Ellis-Bland's lawsuit before reaching the mediated settlement. (Doc. 33 at 15 n.33.) Thus, BITCO has plausibly alleged that the indemnification agreement was triggered when Ellis-Bland filed her complaint.

SAS argues that Ellis-Bland's lawsuit alleged that Stack was solely responsible for her injuries. (Doc. 15 at 10.) But as BITCO notes, Ellis-Bland did not sue SAS, her employer, likely because of Maryland workers' compensation bar. (Doc. 33 at 15-16.) Moreover, that a plaintiff alleges sole responsibility for an accident does not limit a defendant's right to join other allegedly responsible actors. Whether SAS's conduct in any way caused Ellis-Bland's injuries and, if so, to what extent are fact questions that cannot be resolved at this stage. Accord Garcia, 210 N.Y.S.3d at 861 (determining at summary judgment that a party's potential contractual indemnification obligation turned on "triable issues of fact" regarding whether a party's acts or omissions triggered the indemnification provision); Dejesus v. Downtown Re Holdings LLC, 192 N.Y.S.3d 13, 18 (App. Div. 1st Dep't 2023) (stating that the extent to which "[indemnitee] will ultimately obtain indemnification from [indemnitor] based upon its own level of fault is for a jury to decide. Similarly, while [Indemnitor] is correct that it is not the only party alleged to be negligent or owe indemnity, that apportionment is also for the jury to determine").

9

### B. The Agreement's Assignment Prohibition

SAS argues that the Agreement forbids Stack from assigning to BITCO any rights that he possesses pursuant to it, including one of indemnification. (Doc. 15 at 9-10.) The relevant provision reads as follows:

> Neither Party may assign the Agreement, or any of its rights or obligations thereunder, without the prior written consent of the other Party, and any such attempted assignment shall be void. Notwithstanding the foregoing, either Party may, without obtaining the prior written consent of but with notice to the other Party, assign any of its rights and obligations under the Agreement to an Affiliate or to the surviving corporation with or into which a Party may merge or consolidate or any entity to which a Party transfers all, or substantially all, of its business and assets. Notwithstanding the foregoing, this Section 14.1 shall not apply to Service Provider's merger with Advantage Solutions Inc. and any follow-on initial public offering by the successor-in-interest.

(Doc. 7 at 17.)

BITCO contends this provision does not apply for several reasons. First, it argues that the clause only prohibits a "Party" from assigning its rights under the contract and Stack was not a party to it. (Doc. 33 at 11.) Second, BITCO alleges that the provision permitted Stack to assign its indemnification claim to "Affiliates," and that BITCO qualifies as Stack's affiliate. (Id. at 12.) Third, BITCO argues that non-assignment clauses are construed narrowly under New York law and do not forbid the assignment of breach of contract claims. (Id. at 12-13.) Fourth, BITCO argues that its effort to seek subrogation is not barred by

10

the provision. (Id. at 13–14.) And finally, BITCO argues that in addition to being an assignor, Stack can assert its own right to indemnification. (Id. at 14–15.)

Starting with the express language of the Agreement, the court is unpersuaded that BITCO's second argument is correct. BITCO argues that the Agreement did not define the term "Affiliate," (Doc. 33 at 12), but that is untrue. Exhibit A appended to the Agreement defines an "Affiliate" as:

> (i) an entity or association that, now or hereafter, directly or indirectly, controls, is controlled by, or is under common control with, Customer and (ii) with respect to Customer, any independent supermarkets of wholesalers with whom Customer or any of the entities that fall into category (i) of this definition have agreements to provide merchandising, supply chain, administrative and/or technology services. For purposes of this definition, the term "control" (including the terms controlling, controlled by and under common control with) means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

(Doc. 7 at 20.) BITCO has not pleaded any facts indicating that it qualifies as an "Affiliate" of Stack as defined in the Agreement.

But the court need not address all of BITCO's arguments. Under New York law, non-assignment provisions are strictly construed, and non-assignment provisions are typically construed as personal covenants to refrain from assignment where possible.

11

See BSC Assocs., LLC v. Leidos, Inc., 91 F. Supp. 3d 319, 323 (N.D.N.Y. 2015) (citing Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell, 863 F. Supp. 135, 137 (S.D.N.Y. 1994)). Here, the relevant clause prohibits only "Part[ies]" (defined as RBS and SAS) from assigning their rights and obligations under the Agreement. Stack, of course, is not a "Party." Therefore, the non-assignment clause does not operate against Stack to void its assignment of its contractual indemnification claim to BITCO.

Even if the non-assignment clause did operate against Stack, New York law provides that non-assignment clauses do not bar the assignment of breach of contract claims or claims related to an insurance contract after the purported loss has already occurred. See DW Last Call Onshore, LLC v. Fun Eats & Drinks LLC, No. 17-CV-962, 2018 WL 1470591, at *3 (S.D.N.Y. Mar. 23, 2018) ("Under New York law . . . no[n-]assignment clauses . . . do not apply to assignment of claims after loss has occurred unless they say otherwise." (citations and internal quotation marks omitted)); Globecon Grp., LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 170 (2d Cir. 2006) (stating that New York law limits the enforceability of non-assignment provisions in insurance contracts to only prohibit transfers made "prior to, but not after, the insured against loss has occurred") (citations omitted). Here, BITCO has alleged that Stack assigned its indemnification claim to BITCO after it had already settled Ellis-Bland's claim. Thus, at this

12

stage of the proceedings it cannot be said that the Agreement's non-assignment provision prohibits BITCO's attempt to seek contractual indemnification, and dismissal on this ground is unwarranted.

### C. Validity of the Indemnification Clause under New York Law

Finally, SAS contends that the Agreement's indemnification clause is invalid under New York Law. SAS's argument relies on New York General Obligations Law § 5-322.1(1) (McKinney), which reads in relevant part:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by an admitted insurer. This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent.

SAS argues that because BITCO pleaded that the Agreement concerned "a project to remodel the interior of Giant Food Store #0194," the Agreement qualifies as an indemnification clause in an "agreement"

13

related "to the construction, alteration, repair or maintenance of a building." (Doc. 35 at 5.) SAS further argues that because the underlying claim was based "in whole or in part" on Stack's negligence, the statute renders the indemnity agreement unenforceable. (Id.) BITCO responds that it "is entitled to take discovery on the scope of the services SAS was providing under the agreement at issue to determine" whether the statute applies. (Doc. 39 at 2-3.) Moreover, it argues that the statute "prohibits indemnity to the extent the subject injury was 'caused by or resulting from the negligence of the promisee'" and that the relative fault of the parties is a fact issue the court should not resolve at this stage. (Id. at 3-4.) Lastly, BITCO argues the statute expressly exempts agreements "requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent." (Id. (internal quotation marks omitted).) Therefore, BITCO argues, its allegation that SAS caused Bland-Ellis's injuries moves its contractual indemnification claim beyond the sweep of the statute. (Id.)

At this stage, BITCO is correct that fact questions remain as to the scope of SAS's involvement in the remodeling project out of which Ellis-Bland's claims against RBS's contractor, Stack, arose to determine whether indemnity is barred by the statute. See

14

Brooks v. Judlau Contracting, Inc., 898 N.E.2d 549, 550 (N.Y. 2008) (stating that the statute permits even "a partially negligent general contractor to seek contractual indemnification . . . so long as the indemnification provision does not purport to indemnify the general contractor for its own negligence"); Dejesus v. Downtown Re Holdings LLC, 192 N.Y.S.3d 13, 18 (App. Div. 1st Dep't 2023) (recognizing that an indemnification clause was not unenforceable where the clause contemplated "partial indemnification"); Yang v. City of New York, 173 N.Y.S.3d 36, 43 (App. Div. 2d Dep't 2022) ("[Indemnitee] is entitled to contractual indemnification for the portion of damages that is not attributable to its own negligence." (citations omitted)).  Accordingly, SAS's motion to dismiss BITCO's claim for contractual indemnification will be denied.

### III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that SAS's partial motion to dismiss (Doc. 14) is DENIED.

                                         /s/   Thomas D. Schroeder
                                     United States District Judge

March 10, 2025